UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF NEW YORK

In re:
    Robert A. Burnett and
        Candice S. Burnett,

                Debtors.

Case No. 10-31788
Chapter 13

In re:
    George Uzailko, Jr. and
        Connie Leigh Uzailko,

                Debtors.

Case No. 10-31824
Chapter 13

Appearances:

Office of the Chapter 13 Trustee
Counsel for Mark Swimelar
250 S. Clinton St., Suite 203
Syracuse, New York 13202

Lynn Harper Wilson,

Simonetta & Associates, P.C.
Counsel for Robert A. Burnett, Candice S. Burnett
George Uzailko, Jr. and Connie Leigh Uzailko
109 South Warren St., Ste. 512
Syracuse, New York 13202

Russell S. Simonetta,

**Memorandum-Decision and Order on Trustee's Objections to Confirmation of Debtors' Chapter 13 Plans**

Mark Swimelar, chapter 13 trustee ("Trustee"), objects to confirmation of the proposed chapter 13 plans of Robert A. Burnett and Candice S. Burnett ("Burnetts") and George Uzailko, Jr. and Connie Leigh Uzailko ("Uzailkos") (collectively, "Debtors").

1

The basis of the Trustee's objections are that the plans have not been proposed in good faith as required by 11 U.S.C. § 1325(a)(3). The Trustee's allegations of bad faith are premised upon the single fact that the Debtors are not committing their social security income, $878.00 per month in the Burnetts' case and $1,096.00 per month in the Uzailkos' case, to pay their necessary expenses so as to permit the balance of non-social-security income to be applied to and increase the Debtors' plan payments. Since the cases involve a common question of law and counsel is the same in both cases, the matters have been consolidated for consideration of the objections to confirmation and will be addressed in this memorandum-decision as permitted by Federal Rule of Bankruptcy Procedure ("Fed. R. Bankr. P.") 7042, specifically made applicable to contested matters by Fed. R. Bankr. P. 9014(c).

*Background Facts*

The facts are uncontested and are gleaned from the pleadings filed to date in the respective cases. Debtors Robert and Candice Burnett filed their joint petition under chapter 13 of the Bankruptcy Code[1] on June 30, 2010. Form 22C accompanying their petition reflects current monthly income of $6,208.76 which, when multiplied by 12, yields an annual income of $76,505.12. This is $16,603.00 above the applicable median family income for a household of two in the same locale. Accordingly, as "above median" debtors, the Burnetts have an applicable commitment period of 60 months to

---

[1] 11 U.S.C. §§ 1-1532 (2010) (hereinafter "Code").

2

make payments pursuant to a chapter 13 plan. 11 U.S.C. § 1325(b)(4)(A)(ii)(II). The Burnetts propose in their chapter 13 plan to pay $500.00 a month for 60 months, which represents a ten percent dividend payable to their unsecured creditors. Although the Burnetts' monthly disposable income on Form 22C is negative $153.13, their original Schedule J, after deduction of necessary expenses, reflects monthly net income of $493.67, upon which their proposed plan payment is based. When the Burnetts submitted an amended Schedule I to additionally include their receipt of monthly disability income of $878.00 on amended Schedule I, their amended Schedule J correspondingly reflected actual monthly net income of $1,371.67.

Debtors George and Connie Uzailko ("Uzailkos") filed their joint chapter 13 petition under the Code on July 6, 2010. Their Form 22C reflects current monthly income on an annualized basis that is $25,551.00 below the median family income for a family of two. Accordingly, as "below median" debtors, the Uzailkos have an applicable commitment period of 36 months to make payments under a chapter 13 plan. 11 U.S.C. § 1325(b)(4)(A)(i). The Uzailkos have proposed in their plan to pay $400.00 per month for 36 months, resulting in a proposed 37 percent dividend to their unsecured creditors. The Uzailkos' original Schedules I and J that were filed with their petition reflect monthly gross income of $2,328.25 and monthly net income of $400.25, after deduction of necessary expenses. Amended Schedules filed on September 14, 2010, additionally include $1,096.00 of social security income, increasing monthly income to $3,424.25. When the additional social security income is factored in, the actual monthly net income

3

is boosted to $1,496.25.[2]

### *Statutory Provisions Addressing Treatment of Social Security Benefits in Bankruptcy*

Social security, the insurance stipend for wage earners and their dependents funded by payroll tax deductions, was first introduced into legislation as the Social Security Act of 1935. By an amendment adopted four years later, Congress made clear that the right to those benefits

> [s]hall not be transferable or assignable, at law or in equity, and none of the monies paid or payable shall be subject to execution, levy, attachment, garnishment, or other legal process, *or to the operation of any bankruptcy or insolvency law.*

Social Security Act, ch. 666, § 207, 53 Stat. 1360, 1372 (1939) (current version at 42 U.S.C. § 407 (2010) (emphasis added). This anti-assignment provision was again incorporated by Congress when the program was expanded in 1972 as a form of public assistance extending supplemental security income benefits to those 65 years of age and older, to the blind and disabled. *See* Social Security Act, Title XVI § 1601, as added Oct. 30, 1972, Pub. L. No. 92-603, Title III, § 301, 86 Stat. 1465 (1972) (current version at 42 U.S.C. § 1383(d)(1) ("The provisions of section 407 [of this title] ... shall apply with respect to this part to the same extent as they apply in the case of [Sub Chapter] II.").

---

[2] The Burnetts and Uzailkos amended their Schedules I and J to reflect the Debtors' receipt of social security income at the prompting of the chapter 13 Trustee and at the direction of the court. Nevertheless, the Debtors' receipt of social security income had been fully disclosed at the outset of the cases in a separate part of the initial filings made by the Debtors.

4

Prior to passage of the Bankruptcy Reform Act of 1978, which introduced the current chapter 13 of the Code, the former Bankruptcy Act of 1898, as amended, allowed for a "wage earner" plan under then chapter XIII. The Code expanded the class of individuals eligible to seek chapter 13 protection to include individuals whose only source of income was from social security benefits. *See* 11 U.S.C. § 109(e) (allowing "individuals with regular income" to file for relief under chapter 13). As a result of this change, some early cases held that social security benefits were included as property of the estate under Code § 541 and that the anti-assignment provision of the Social Security Act had been impliedly modified by the Code. *See United States v. Devall*, 704 F.2d 1513 (11th Cir. 1983); *Toson v. United States*, 18 B.R. 371, 373-375 (N.D. Ga. 1982). In swift reaction to those cases, Congress amended the anti-assignment provision in 1983 to provide as follows:

> No other provision of law, enacted before, on, or after April 20, 1983, may be construed to limit, supersede, or otherwise modify the provisions of this section except to the extent that it does so by express reference to this section.

42 U.S.C. § 407(b). The explicit language of the above amendment evinces Congress' clear intent that the anti-assignment provision is not to be deemed amended unless Congress specifically references the statute in the previous or subsequent legislation, absent which, social security income remains outside "the operation of any bankruptcy … law." 42 U.S.C. § 407(a).

Amendments to the Code introduced by The Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA") include a definition for "current monthly

5

income" as the average of monthly income received by the debtor "from all sources" for the six months preceding the filing but specifically "excludes benefits received under the Social Security Act." 11 U.S.C. § 101(10A). The disposable income of a debtor needed to fund a plan is then derived by subtracting reasonably necessary expenses from current monthly income. 11 U.S.C. § 1325(b)(2). Contrary to any reference to the provision of section 407(a) of Title 42 to indicate an intent to modify the anti-assignment provision, Congress made clear in the BAPCPA amendments to the Code that social security benefits were not part of a debtor's disposable income.

*Discussion*

Against the foregoing background, the court considers the arguments raised by the Trustee in support of his objections to confirmation. Anticipating the Debtors' argument that social security income is excluded from the bankruptcy estate under 42 U.S.C. § 407, the Trustee responds that the filing of chapter 13 is a completely voluntary act as there is no provision in the Code for an involuntary chapter 13 filing against a debtor. The Trustee points out that chapter 13 debtors have an absolute right to convert the case to chapter 7 at any time and a qualified right to have their filing dismissed. 11 U.S.C. § 1307(a) and (b). It is the Trustee's position that if a debtor chooses to utilize the chapter 13 provisions, the debtor should do so with "honesty of intention" and not be allowed to shield social security income at the expense of creditors by using it for undisclosed purposes or the purchase of luxury goods or services rather than paying for daily living expenses. To do so, in the opinion of the Trustee, represents an abuse of the purpose and

6

spirit of the Code and warrants a finding that the plan has not been proposed in good faith.

In his treatise on chapter 13 bankruptcy, Keith Lundin observes that the requirement of good faith for confirmation under Code § 1325(a)(3) has been the single, most litigated provision of chapter 13 and has divided the circuit cases into two basic camps. Some courts employ the "factors approach" considering several discrete factors to assess good faith, as exemplified by the Eighth Circuit in *In re Estus*, 695 F.2d 311 (8th Cir. 1982). Other courts adopt a "generic test" equating good faith with "honesty of intention." Keith M. Lundin, *Chapter 13 Bankruptcy*, 3rd ed. 2007-1, Vol. 3 § 177.1 (2000 & Supp. 2004). The web in which courts may become entangled in determining this issue was aptly described by the Bankruptcy Appellate Panel for the First Circuit as follows:

> The meaning of the term "good faith" has gone far afield from that intended by the drafters of the Bankruptcy Code. Applying individualized standards of moralistic decision-making reserved only for Congress, many courts have interpreted "good faith" to mean fairness to creditors as determined by the court. But fairness is a relative term, and ... many of the factors employed in the case law have been preempted by contrary judgments explicitly made by Congress ... The meaning of good faith is simple honesty of purpose ... And, if there can be any doubt that this was its meaning intended by Congress when it passed the Code, that doubt is resolved by examination of decisions under the prior Act. In applying the same good faith requirement under the prior Act, courts looked only to the honesty of the debtor's postfiling conduct. They did not concern themselves with ... the "purpose or spirit" of bankruptcy law. If Congress intended to change this pre-Code approach, we must presume Congress would have expressed that intent. The contrary view of good faith, so prevalent in the case law, is blatantly inconsistent with a debtor's clear statutory rights.

7

*Keach v. Boyajian (In re Keach)*, 243 B.R. 851, 867-868 (B.A.P. 1st Cir. 2000).

In addressing the issue of good faith in the chapter 13 context, the Second Circuit expressed its agreement with other circuit courts that "where the statute is silent, courts should not read into [the Bankruptcy Act of 1978] any per se limitations or requirements in respect to 'good faith' that Congress did not enact." *Johnson v. Vanguard Holding Corp (In re Johnson)*, 708 F.2d 865, 868 (2d Cir. 1983).

The Trustee cites to a number of decisions post BAPCPA in which bankruptcy courts sustained the chapter 13 trustee's objections to confirmation on the basis that the plans were not proposed in good faith. *In re Westing*, No. 09-03594-TLM, 2010 WL 2774829 (Bankr. D. Idaho July 13, 2010); *In re Rodgers*, 430 B.R. 910 (Bankr. M.D. Fla. 2010); *In re Cranmer*, 433 B.R. 391 (Bankr. D. Utah 2010). Each of the cases involved, among other factors, the debtors' failure to include social security benefits to pay creditors under their plans. *Westing* is distinguishable in that the debtors failed to disclose assets including the opening of a new business formed with assets belonging to the estate, which independently supported a finding of bad faith. Similarly, in *Rodgers*, the debtors overstated expenses to include a sizeable mortgage payment that they were no longer making. Both the *Rodgers* and *Cranmer* courts found that the social security benefits constituted disposable income that was available for payment to the debtor's creditors, with the *Cranmer* court purporting to rely in its decision upon the United States Supreme Court's decision in *Hamilton v. Lanning (In re Lanning)*, 130 S. Ct. 2464 (2010), which had been decided three weeks earlier.

In *Hamilton,* the Supreme Court found that the calculation of projected disposable income involves a flexible approach in which the court may take into account changes in the debtor's income and expenses that are known or ascertainable at the time of confirmation. *Id.* In most cases, the inquiry begins and ends with the calculation of disposable income that is then projected forward. However, in unusual cases, the court may depart from the formulaic approach of Code § 1325(b)(2) and account for changes in the debtor's income and expenses to obtain a more accurate calculation of projected disposable income. In purported reliance upon this language, the *Cranmer* court determined that social security income should be included in projected disposable income. The court reasoned that since the debtor's current monthly income did not include the social security income, it did not reflect all sources of future income available to the Debtor. The court concluded that such facts presented an "unusual" case, as recognized by the Supreme Court in *Hamilton*, which warranted the inclusion of the social security income as projected disposable income. *Cranmer*, 433 B.R. at 399. This court respectfully disagrees with the holding of *Cranmer* and believes such interpretation is inconsistent with the holding of *Hamilton*. If Congress specifically excluded social security income from the definition of current monthly income and, therefore, disposable income pursuant to Code § 1325(b)(2), then even under the flexible approach articulated by Justice Alito who wrote the majority opinion, "projected" disposable income would also exclude social security income absent a debtor's voluntary commission of social security income into a plan. Furthermore, as noted above, the anti-assignment provision of 42 U.S.C. § 407 was not invoked in the BAPCPA amendments as mandated by

statute to warrant such an interpretation nor does the social security income represent a "change" in future income of the debtor as contemplated in *Hamilton*.

Contrary to the holdings in the above cases that lend support to the Trustee's position, the Eighth Circuit Court of Appeals has held that the anti-assignment provision of the Social Security Act "operates as a complete bar to the forced inclusion of past and future social security proceeds in the bankruptcy estate." *In re Carpenter*, 614 F.3d 930, 936 (8th Cir. 2010).

The Trustee cites to this court's oral ruling of October 6, 2009 denying confirmation of the debtor's plan in the chapter 13 case, *In re Charles C. Harrington*, Case No. 09-30398, in which this court treated the $1,900.00 of social security income which the debtor voluntarily contributed to the plan as part of the debtor's projected future income. *See Hildebrand v. SSA (In re Buren)*, 725 F. 2d 1080, 1086 (6th Cir. 1984) (noting "social security payments only become part of a debtor's estate if he chooses to include them..."). The basis for initially denying confirmation in *Harrington*, which was not evident from the excerpted record of the proceeding, was the debtor's intention to carry $100,000.00 of secured debt on three cars he proposed to retain under his plan: a 2009 Chevrolet Impala, a 2008 Cadillac DTS and a 2007 Chevrolet Corvette. An

amended plan was ultimately confirmed when the third car, the 2007 Corvette, was surrendered and the plan became feasible.[3]

The Debtors rely upon the case of *In re Barfknecht*, 378 B.R. 154 (Bankr. W.D. Tex. 2007) in which the court addressed a similar objection on alleged bad faith grounds that the debtors had failed to include their social security benefits in their disposable income. In overruling the objection, the court found it lacking in two respects. First, the objection amounted to a *per se* rule, that the Fifth Circuit, as well as the Second Circuit, rejects in measuring good faith. Second, the court found that the question whether plan payments must include income derived from social security benefits had already been addressed in the Code. *Id.* at 164. More recently, the Eighth Circuit Bankruptcy Appellate Panel has held that the debtor's retention of social security income, in and of itself, is insufficient to find bad faith under Code § 1325(a)(3). *See Fink v. Thompson (In re Thompson)*, 439 B.R. 140 (B.A.P. 8th Cir. 2010) (citing favorably *In re Green*, No. 09-44481-13, 2010 Bankr. LEXIS 945 (W.D. Mo. Feb. 1, 2010)).

In weighing the foregoing, this court finds that the Trustee's objection alleging *per se* bad faith for Debtors' failure to include social security benefits in their plans does not provide sufficient grounds to deny confirmation. Accordingly, since the sole

---

[3] The Trustee also cites to *In re Bartelini*, 434 B.R. 285 (Bankr. N.D.N.Y. 2010), where the Honorable Diane Davis concluded on the facts before her that the social security benefits were not included as part of debtors' projected disposable income. This court concurs with her decision in that case and believes its holding here is consistent with Judge Davis' well-reasoned opinion. While a court cannot compel the inclusion of social security income in calculating projected disposable income, this court finds nothing in the Code or the Social Security Act to suggest that a debtor's voluntary contribution of the same cannot be considered by a court determining whether or not to confirm a plan.

11

objection to confirmation of the respective plans has been overruled, the chapter 13 plans may each be confirmed and the Trustee is requested to submit an order of confirmation in each of the above cases.

So Ordered.

Dated: January 21, 2011
Syracuse, New York

Hon. Margaret Cangilos-Ruiz
United States Bankruptcy Judge